UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COMMODITY FUTURES TRADING
COMMISSION,

            Plaintiff,

                                    File No.  1:06-CV-166

v.

                                    HON. ROBERT HOLMES BELL

AURIFEX COMMODITIES RESEARCH
COMPANY, et al.,

            Defendants.
_____/

## O P I N I O N

    Plaintiff Commodity Futures Training Commission ("CFTC") filed a complaint
against Defendants Aurifex Commodities Research Company, Aurifex Research, L.L.C., Ty
Klotz and Monette Klotz ("M. Klotz") on March 7, 2006, alleging violations of the
Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1-27f, and the regulations promulgated
thereunder, 17 C.F.R. §§ 1.1-.70.  This matter is currently before the Court on Plaintiff
CFTC's  motion for summary judgment against Defendants Ty Klotz and M. Klotz.  (Dkt.
No. 188, Pl.'s Mot. for Summ. J. )

    In its motion CFTC requests a declaratory judgment that Defendants Ty Klotz and
M. Klotz have violated various sections of the CEA and its regulations;[1] an injunction

---

[1]Specifically CFTC seeks a declaration that that Defendants Ty Klotz and M. Klotz
violated  7 U.S.C. §§  6b(a)(2)(i) and (iii), 6c(b), 6m(1), 6n(4), and 6o(1) and Commission

prohibiting Ty Klotz and M. Klotz from engaging in conduct in violation of those sections of the CEA and the CFTC's regulations; an injunction prohibiting Ty Klotz and M. Klotz from engaging in any activity related to trading in any commodity; an order directing Ty Klotz and M. Klotz to pay restitution, jointly and severally, in the amount of $1,826,708.16, plus pre-judgment and post-judgment interest; an order directing Ty Klotz to pay a civil monetary penalty of $120,000.00 for each of the eight counts of the Complaint where he is charged with violations of the CEA or Regulations, for a total of $960,000.00; and an order directing M. Klotz to pay a civil monetary penalty of $120,000 for each of the seven counts of the Complaint where she is charged with violations of the CEA or Regulations, for a total of $840,000.00.

For the reasons that follow Plaintiff CFTC's motion for summary judgment will be granted, except as to the amount of the monetary penalty against M. Klotz.

## I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the moving party also bears the burden of persuasion at trial, the moving party's initial

---

Regulations found at 17 C.F.R. §§  4.20(c), 4.21, 4.22. and 33.10 as alleged in Counts 1, 3-8, and that  Ty Klotz violated 7 U.S.C. § 6b(a)(2)(ii) as alleged in Count 2.

summary judgment burden is to "show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting James William Moore et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). *See also Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."). If the moving party carries its burden then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II.

Defendant Ty Klotz does not oppose the entry of an order granting Plaintiff's request for summary judgment. Neither does he oppose the amount of restitution, except that he requests that he be credited for the amounts held by the Receiver. (Dkt. No. 206, Def. Ty Klotz Resp. 1-2.) He does, however, object to the requested civil monetary penalty on the

grounds that it is well beyond his ability to repay.  (*Id.* at 3-4.)  He has attached an affidavit indicating that he has run out of money and that a large fine gives him no chance of repayment during his lifetime.  (*Id.*, Ex. A, Aff. of Ty Klotz ¶¶ 3-4.)

Defendant M. Klotz similarly does not object to entry of summary judgment against her.  (Dkt. No. 210, M. Klotz Resp. 1.)  However, she requests that the Court consider her cooperation in setting the amount of restitution and that no monetary penalty be assessed against her because Ty Klotz was the perpetrator of this fraud.  (*Id.* at 2-3.)

Neither of the Klotz Defendants has come forward with any evidence to rebut the evidence presented by CFTC.  There is accordingly no genuine issue of material fact for trial.  Accordingly, the unopposed evidence contained in the exhibits to CFTC's motion for summary judgment and the Second Supplemental Report of Thomas J. Koprowski forms the basis for this Court's opinion.[2]

## III.

Plaintiff CFTC is an independent federal regulatory agency charged with responsibility for administering and enforcing the provisions of the CEA.  7 U.S.C. § 2(a)(2). The CEA authorizes the CFTC to bring a civil action in federal court to enjoin any act or practice constituting a violation of any provision of the CEA, to enforce compliance

---

[2]The exhibits referenced in this opinion are the exhibits attached to Plaintiff CFTC's motion for summary judgment.  (Dkt. Nos. 190-98).  Because there is no dispute as to the relevant facts in this case, this opinion will not cite every supporting fact in the record.  The Court refers the reader to Plaintiff's motion for summary judgment (Dkt. No. 188) for more comprehensive citations to the record.

with the CEA, and to seek civil penalties.  7 U.S.C. § 13a-1(a), (b), (d).  Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because during most of the relevant time period the Klotz Defendants resided in and transacted business in Mason, Michigan.

During the relevant time period Ty Klotz and M. Klotz were married to each other.  (Ex. 7, M. Klotz Dep. 14.)  They lived in Mason, Michigan until December 2005 when Ty Klotz moved to Carbondale, Illinois.

In June 2004, Ty Klotz and M. Klotz filed an assumed name registration in Ingham County, Michigan to operate under the name "Aurifex Investment."  (Ex. 18.)  In September 2004 M. Klotz opened a bank account in the name of M. Kltoz/Aurifex Investment (the "126 account").  The signature card for the 126 account identifies M. Klotz as the president of Aurifex Investment.  (Ex. 26.)

In April 2004 M. Klotz opened an individual commodity futures trading account in her name at Xpresstrade, LLC, a futures commission merchant.  Her application falsely stated that she had $121,070 in liquid assets, that she had a net worth of $151,000 , and that she had experience trading commodities, futures, options, and foreign currencies after living in Europe for many years.   (Ex. 17, M. Klotz Dep. 72-75.)

In June 2004 M. Klotz filed an application with the Michigan Department of Consumer & Industry Services for a limited liability company under the name "Aurifex Research L.L.C."  (Ex. 14.)  The registration was completed in November 2004.  In March

2005 M. Klotz opened a bank account in the name of Aurifex Research (the "626 account").
(Ex. 28.)

In June 2005 Aurifex Commodities Research Company ("ACRC") was incorporated by Richard Robbins.  Ty Klotz deposited the initial $30,000 into the ACRC account with a check from the 126 account signed by M. Klotz.  (Ex. 65, Robbins Dep. 73; Ex. 64, Check; Ex. 61, Summary of 126 Acc't.)  ACRC's Articles of Incorporation and bank account used the Aurifex business address.  Aurifex Investments, Aurifex Research, L.L.C.  and ACRC are collectively referred to as "Aurifex".

Ty Klotz was involved in the day to day operations of Aurifex and had no other gainful employment.  (Ex. 8, Ty Klotz Dep. 184; Ex. 17, M. Klotz Dep. 38.)  In 2004 M. Klotz was employed as a manager at the Traverse City Pie Company where she had an annual income of $27,083.  (Ex. 7, M. Klotz Dep. 22; Ex. 22.)  M. Klotz did not work in the Aurifex office, but she bought the gold and silver on behalf of Aurifex.  (Ex. 17, M. Klotz Dep. 51.)  Neither Ty Klotz nor M. Klotz was ever registered with the CFTC in any capacity. (Ex. 8, Ty Klotz Dep. 132; Ex. 17, M. Klotz Dep. 11-12.)

Ty Klotz described Aurifex to participants and potential participants as a private investment partnership that was engaged in commodity futures trading activity.  Participants and potential participants were informed that their funds would be pooled and that Aurifex would make investments on their behalf.  "All of you are invested in a private hedge fund. I lump everyone's money into one big pile and go after profitable investments with that

money." (Ex. 43 at 2.)   "We are a private hedge fund.  Once again, all of our combined money trades in one lump sum." (Ex. 43 at 3.)  Ty Klotz described M. Klotz as Aurifex's gold and silver buyer.  (Ex. 43 at 3.)

Ty Klotz told Aurifex participant Mary Sherwood that he had been getting about 20 percent a month for people, and that it was insured.  "[W]hat would happen is he'd put my money into a bank account, and then he would use his money to trade.  Therefore, if I ever wanted to get out of it, I would have my money there." (Ex. 36, Sherwood Dep. 33.)  Ty Klotz told Michelle Mullins that the money was insured with Lloyd's of London and that there was no risk.  (Ex. 38, Prelim. Inj. Hr'g 20.)

While soliciting participants to invest in Aurifex, Ty Klotz made statements that he knew were false, or recklessly disregarded the fact that they were false, including the following:

   a.    that the Aurifex pool had been averaging a return of 20% per month for participants (Ex. 34, Carter Test. 9; Ex. 35, Sprenkel Dep. 48; Ex. 36, Sherwood Dep. 33; Ex. 37, Robbins Dep. 116);

   b.    that participants had no risk of loss of principal, as the participant's principal was insured with a Lloyd's of London insurance policy (Ex. 38, Mullins Test. 20, 22; Ex. 39; Ex. 40, J. Seiler Test. 43; Ex. 44);

   c.    that Aurifex would trade commodity futures only with Klotz's personal funds, and that participants' funds would remain on deposit in Klotz's personal bank account (Ex. 33, Ty Klotz Dep. 31; Ex. 37, Robbins Dep. 119; Ex. 38, Mullins Test. 23; Ex. 40, J. Seiler Test. 43; Ex 41, S. Seiler Test. 58; Ex. 43, Aurifex Nov. 2005 Newsletter);

   d.    that Aurifex would not charge a per transaction or yearly fee, but would instead be compensated by retaining 10% of the amount of a

participant's principal once the investment had doubled (Ex. 44, Aurifex Contract);

e.       that participants could withdraw their investments, plus any earnings, at any time (Ex. 33, Ty Klotz Dep. 31; Ex. 40, J. Seiler Test. 43-44); and

f.       that Ty Klotz was registered as a commodity pool operator (Ex. 35, Sprenkel Test. 137-38; Ex. 37, Robbins Dep. 82-83; Ex. 41, S. Seiler Test. 57-58; Ex. 45, Ty Klotz CFTC Licence; Ex. 46, Cloar Dep. 63-64).

Ty Klotz's introductory "Who We Are" brochure indicated that "futures trading requires superior intelligence, a dedication to learning and years of hard work and experience," (Ex. 21), falsely implying that Aurifex had such experience.

Ty Klotz sent newsletters to Aurifex participants which contained false statements in an effort to assure them that their current and future investments would be safe and profitable.  The false statements included the following:

a.       that Aurifex was comprised of nine foreign corporations and four American corporations (Ex. 47);

b.       that Aurifex had $18,000,000.00 to work with in November 2005 (Ex. 43, Newsletter at 2); and

c.       that profits for September 2005 were 21.8% (Ex. 48).

Ty Klotz sent monthly statements to Aurifex participants that falsely stated what was traded, when it was traded, the quantities traded, beginning and ending balances, and the profit earned.  (Koprowski Report ¶¶ 26-57; Ty Klotz Dep. 48, 56-57.)

Ty Klotz solicited individuals to invest in Aurifex from May 2004 to December 2005. During this time period 352 participants invested at least $2,226,267.59 in Aurifex.  Of that

amount, at least $2,051,703.10 was deposited into one of the three bank accounts controlled by M. Klotz. An additional $174,564.49 was received from participants, but was not deposited into any known bank account and is unaccounted for. (Koprowski Report ¶ 64.)

After setting up the Aurifex Investment and Aurifex Research L.L.C. accounts and depositing participant funds into those accounts, M. Klotz wrote checks to herself from those accounts for the personal use of M. Klotz and Ty Klotz. The Klotz Defendants used Aurifex funds to purchase personal items including his and her Rolex watches for $35,000, a house, home renovations, medical treatment, and automobiles, including a Jaguar that Ty Klotz drove. (Ex. 17, M. Klotz Dep. 57, 70; Ex. 8, Ty Klotz Dep. 227-28; Ex. 33, Ty Klotz Dep. 70.) After Ty Klotz moved in with Robin Bushur, Aurifex's bookkeeper, in Carbondale, Illinois, Bushur, with Ty Klotz's knowledge and approval, purchased a large screen television with Aurifex participant funds. (Ex. 85, Bushur Dep. 172-73; Ex. 86, Check.)

Of the more than two and a quarter million dollars participants invested in Aurifex, $497,687.31 was distributed back to Aurifex participants; $80,405.70 was lost in commodity futures trading; $184,043.62 was paid to Aurifex employees; $34,826.11 was paid to credit card companies; $146,102.10 was used to purchase gold and silver; and $313,851.10 was used for the Klotz Defendants' personal expenses such as cars, personal residence, Rolex watches, and medical expenses. A total of $226,059.39 in cash withdrawals cannot be

accounted for. Aurifex still owes its participants $1,826,708.16. (Koprowski Report ¶¶ 63-66.)

M. Klotz's trading account at Xpresstrade was funded with $150,078.45 from Aurifex participant funds funneled through M. Klotz's personal bank account or the Aurifex Investment account (126 account). The funds were invested in commodity futures and options. Of the 24 months the account was traded, sixteen months were losing months and only eight months were profitable. From April 2004 through July 2006 the account incurred cumulative trading losses of $67,497.16. From April through December 2004 the annual rate of return was negative 95%. From January 2005 through December 2005, the annual rate of return was negative 88%. From January 2006 through July 2006, the annual rate of return was negative 21%.

Ty Klotz sent monthly pool statements by mail to Aurifex pool participants purporting to show their beginning of month balance, commodities futures trades that had occurred during the month, and their end of month account balance. The monthly statements falsely reported trade activity and falsely reported earnings. (Koprowski Report ¶¶ 26-57.) Moreover, the statements did not reflect that the futures account was opened under the name "Monette Klotz" rather than the pool name, did not report the participants' respective percentage share of the pool's funds, and almost always showed profits rather than losses.

Aurifex participants never received a Disclosure Document outlining risks, identifying the pool's operator or manager, or describing the pool's policies, fees, commissions, expenses, or past performance.  (Ex. 33, Ty Klotz Dep. 65-67.)

**IV.**

Plaintiff CFTC has alleged Ty Klotz and M. Klotz violated sections 4b(a)(i) and (iii), 4c(b) and 4o(1)(A) and (B) of the CEA, 7 U.S.C. §§ 6b(a)(i) & (iii), 6c(b), 6o(1)(A) & (B), by misappropriating Aurifex participants' funds.

Section 4b(a) of the CEA makes it unlawful for any person to deceive or defraud another person "in or in connection with any order to make, or the making of, any contract of sale of any commodity . . . for future delivery." [3]  Section 4c(b) of the CEA, 7 U.S.C.

---

[3]The CEA provides in relevant part:

It shall be unlawful . . . (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, . . .

(i) to cheat or defraud or attempt to cheat or defraud such other person;

(ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof; [or to]

(iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person.

11

§ 6c(b) prohibits fraud in connection with commodity options trading.[4]  Section 4o(1) makes

it unlawful for a commodity pool operator to defraud a participant.[5]

Misappropriation of customer funds for personal use violates the antifraud provisions

of section 4b(a)(2)(i) and (iii) of the CEA.  *CFTC v. Morse*, 762 F.2d 60, 62 (8th Cir. 1985)

(holding that defendant's use of customer funds for personal use violated section 4b of the

CEA); *CFTC v. King*, No. 3:06-CV-1583-M,  2007 WL 1321762, at *2 (N.D. Tex. May 7,

2007); *CFTC v. Int'l Berkshire Group Holdings, Inc.*, No. 05-CV-61588, 2007 WL

---

7 U.S.C. § 6b(a)(2).

[4]The ban on options fraud involves a two-step process: section 4c(b) of the CEA prohibits option transactions "contrary to any rule, regulation, or order of the Commission," and the regulations promulgated thereunder make it unlawful for any person to deceive or defraud another "in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction." 17 C.F.R. § 33.10.

[5]Section 4o(1) of the CEA provides in relevant part:

(1) It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--

(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6o.

3087508, at *5 (S.D. Fla. Oct. 12, 2007). In order to prove fraud it is not necessary to show

evil motive or a subjective intent to cheat or steal:

> It is enough that he acted deliberately, knowing that his acts were unauthorized and contrary to instructions. Such knowing, intentional conduct made his acts wilful, and therefore his violations of the statutory prohibition against cheating or defrauding the customer were wilful, in the accepted sense for infractions of this type.

*Morse*, 762 F.2d at 62 (quoting *Haltmier v. CFTC*, 554 F.2d 556, 562 (2d Cir.1977)).

The evidence clearly establishes that Defendants Ty Klotz and M. Klotz deposited

participants' funds in their own accounts, that they used significant portions of the

participants' funds for their own personal expenditures, and that they knew that the funds

they were spending were not their own. The evidence is sufficient to establish that

Defendants Ty Klotz and M. Klotz defrauded participants by misappropriating participant

funds in violation of sections 4b(a)(i) and (iii) of the CEA. Ty Klotz and M. Klotz engaged

in commodity options trading as well as commodity futures trading with participant funds

on deposit in the Xpresstrade account. The conduct of Ty Klotz and M. Klotz that violates

section 4b(a) of the CEA also constitutes a violation of section 4c(b) of the CEA and

Regulation 33.10.

Plaintiff CFTC has alleged that Defendant Ty Klotz violated the antifraud sections

of the CEA identified above (sections 4b(a)(i) and (iii), 4c(b) and 4o(1)(A) and (b)) and

section 4b(a)(2)(ii) by making material misrepresentations to Aurifex participants and

prospective Aurifex participants, by failing to report losses to participants, and by providing false account statements to participants.

"[T]o establish a claim for futures and options fraud under section 4b(a) and 4c(b) of the CEA in an enforcement action, the CFTC must demonstrate that the defendant made a material misrepresentation of presently existing or past fact with scienter." *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447 (D. N.J. 2000). Actionable misrepresentations include those made to investors when soliciting their funds. *Id.* at 447-48.

There is no question that Ty Klotz made false representations. He made false representations concerning profit potential and the lack of risk to prospective participants, and he made false representations concerning profits earned to investors after they had invested. A misrepresentation is material "if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *Id.* at 447 (quoting *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986)). "Misrepresentations regarding profit potential and risk go to the heart of a customer's investment decision and are therefore material as a matter of law." *CFTC v. Marquis Fin. Mgmt. Sys., Inc.*, No. Civ.A. 03-74206, 2005 WL 3752233, at *7 (E.D. Mich. June 8, 2005) (quoting *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 (D. Md. 2000)). The evidence also establishes that Ty Klotz made the false representations with the requisite degree of scienter. "The term 'scienter' refers to a mental state embracing an intent to deceive, manipulate, or defraud." *Rosenberg*, 85 F. Supp. 2d at 448. There is

overwhelming evidence that Ty Klotz's misrepresentations were made intentionally and with knowledge of their falsity. Ty Klotz admitted that the monthly statements contained misrepresentations as to the trade activity and the profits earned. (Ex. 33, Ty Klotz Dep. 57.) Ty Klotz's affirmative false statements regarding his history of profits, insurance of the Aurifex accounts by Lloyd's of London, and his registration as a commodity pool operator cannot be the result of a mistake.

The Court finds as a matter of law that Ty Klotz violated sections 4b(a)(i), (ii), and (iii), and 4c(b) of the CEA by making material misrepresentations to Aurifex participants and prospective Aurifex participants.

## V.

Plaintiff CFTC has alleged that Ty Klotz and M. Klotz violated various sections of the CEA and its regulations that apply specifically to commodity pool operators ("CPOs").

The term "commodity pool operator" is defined in the CEA to mean:

> any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

7 U.S.C. § 1a(5).

Ty Klotz and M. Klotz operated as CPOs during the relevant time period because they

engaged in a business that was in the nature of an investment trust, and solicited and received funds from others for the purpose of trading commodity futures.  Their transactions constituted the operations of a commodity pool because the individual investments were combined for investment in the futures market.  The investments were deposited and commingled in one of M. Klotz's bank accounts from which they were funneled into the M. Klotz futures trading account.

Plaintiff CFTC has alleged that Ty Klotz and M. Klotz violated section 4m(1) of the CEA, 7 U.S.C. § 6m(1), by acting as commodity pool operators ("CPOs") without benefit of registration.

Section 4m(1) makes it unlawful for a CPO to use the mails in connection with his business as a CPO unless he is registered with the CFTC.  7 U.S.C. § 6m(1).  The evidence clearly establishes that neither Ty Klotz nor M. Klotz nor any of the Aurifex entities was registered as a CPO with the CFTC in any capacity.  Accordingly, the Court finds as a matter of law that Defendants Ty Klotz and M. Klotz violated section 4m(1) of the CEA.

Plaintiff CFTC has alleged that Ty Klotz and M. Klotz violated section 4n(4) of the CEA, 7 U.S.C. § 6n(4), and Regulation 4.22, 17 C.F.R.  § 4.22, by failing to provide appropriate periodic account statements and certified annual reports to Aurifex participants.

Subsection (4) requires every CPO to regularly furnish statements of account to each participant in the form prescribed by the CFTC and to include complete information as to the current status of all trading accounts in which such participant has an interest.  7 U.S.C.

§ 6n(4).  Regulation 4.22 details the required contents of the monthly account statement and the annual report.

Contrary to their obligations under the CEA and its regulations, Defendants Ty Klotz and M. Klotz did not furnish the Aurifex participants with any form of Annual Report. Although Aurifex sent out monthly statements purporting to show activity on the individual participant's portion of the pooled funds, the statements did not detail the net asset value of the pool at the beginning and end of the month, additions to and withdrawals from the pool, or any information regarding brokerage commissions, fees or expenses.  Accordingly, the Court finds as a matter of law that Defendants Ty Klotz and M. Klotz violated section 4n(4) of the CEA and Regulation 4.22.

Plaintiff CFTC has alleged that Ty Klotz and M. Klotz violated section 4o(1)(A) and (B) of the CEA, 7 U.S.C. § 4o(1)(A) and (B), by committing fraud while acting as a CPO.

Because Ty Klotz and M. Klotz were acting as CPOs, their misappropriation of customer funds, as found in section IV above, also constitutes a violation of section 4o(1) of the CEA.  *CFTC v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) (holding that commodity pool operator misappropriated customer funds by disbursing investor funds to other investors, herself and her family, thereby violating sections 4b(a) and 4o(1) of the CEA).  Accordingly, the Court finds as a matter of law that Defendants Ty Klotz and M. Klotz violated section 4o(1) of the CEA.

Plaintiff CFTC has alleged that Defendants Ty Klotz and M. Klotz violated CFTC Regulation 4.21 by failing to provide Disclosure Documents to prospective Aurifex participants.

Regulation 4.21 requires CPOs to deliver to prospective pool participants a Disclosure Document prepared in accordance with §§ 4.24 and 4.25.  17 C.F.R. § 4.21.  The required disclosures include a cautionary statement and a risk disclosure statement in language specified in the regulations, identification of key individuals and their business backgrounds, a discussion of the principal risk factors, a description of the investment program and the use of the proceeds, and the past performance of the pool.  17 C.F.R. §§ 4.24 and 4.25.

Defendants Ty Klotz and M. Klotz never provided a Disclosure Document to prospective Aurifex pool participants.  Accordingly, the Court finds as a matter of law that Defendants Ty Klotz and M. Klotz violated CFTC Regulation 4.21.

Finally, Plaintiff CFTC has alleged that Ty Klotz and M. Klotz violated CFTC Regulation 4.20(c) by commingling the Aurifex participant funds with the funds of others.

Regulation 4.20(c) prohibits CPOs from commingling the property of any pool with the property of any other person.  17 C.F.R. § 4.20(c).  The evidence clearly establishes that funds from participants were commingled with the funds of M. Klotz, including in her own personal bank account, the various Aurifex bank accounts and her personal trading account. The evidence also clearly establishes that Defendants Ty Klotz and M. Klotz spent

participant funds for their own personal use.  (Ex. 62, 626 account summary.)  Accordingly, the Court finds as a matter of law that Defendant Ty Klotz and M. Klotz violated CFTC Regulation 4.20(c).

## VI.

In light of the Klotz Defendants' violations of the CEA Plaintiff CFTC has requested injunctive relief pursuant to section 6c of the CEA, 7 U.S.C. § 13a-1.

Section 6c authorizes the CFTC to bring an action to enforce compliance with the CEA "whenever it shall appear to the Commission that any contract market or other person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder."  7 U.S.C. § 13a-1.  "Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond."  *Id.*

"Actions for statutory injunctions need not meet the requirements for an injunction imposed by traditional equity jurisprudence.  Once a violation is demonstrated, the moving party need show only that there is some reasonable likelihood of future violations."  *CFTC v. Hunt*,  591 F.2d 1211, 1220 (7th Cir. 1979).  *See also CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978) ("In actions for a statutory injunction, the agency need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits.  A prima facie case of illegality is sufficient." ).

Courts look to a variety of factors in determining whether there is some reasonable likelihood of future violations. Factors to be considered include "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *CFTC. v. Risk Capital Trading Group, Inc*., 452 F. Supp. 2d 1229, 1247 (N.D. Ga. 2006) (quoting *SEC v. Ginsburg*, 362 F.3d 1292, 1304 (11th Cir.2004)). "While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is 'highly suggestive of the likelihood of future violations.'" *Hunt*, 591 F.2d at 1220 (quoting *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)). "When the violation has been founded on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future misconduct." *Id. See also CFTC v. Am. Metals Exch. Corp*., 693 F. Supp. 168, 191 (D. N.J. 1988) ("The likelihood of future violations may be inferred from past infractions based upon consideration of the totality of the circumstances to determine if the past infraction was an isolated occurrence as opposed to an indication of a systematic and continuous pattern of wrongdoing.").

The Klotz Defendants' fraudulent activities continued for approximately two years, injured over 300 participants, and was directed at some of the most vulnerable people in their community. The fraud involved significant planning and preparation, as evidenced by

Defendants' formation of companies, creation of new bank accounts, and preparation of newsletters and monthly statements. The Klotz Defendants used the fruits of their fraud to purchase substantial luxury items for themselves. Even after this case was initiated the Klotz Defendants were not forthcoming with information about their disposition of participants' funds. The Court concludes that there is some reasonable likelihood of future violations if Defendants are not enjoined from further statutory violations and also from further business activities related to soliciting and accepting money from commodity pool participants. Accordingly, the Court will enter an injunction according to the terms requested by Plaintiff CFTC.

## VII.

Plaintiff CFTC has also requested the Court to issue an order requiring Ty Klotz and M. Klotz, jointly and severally, to  pay restitution to the Receiver in the amount of $1,826,708.16.

"As the Act expressly authorizes the Court to provide the equitable remedy of an injunction in 7 U.S.C. § 13a-1, the Court has the authority to award 'ancillary equitable relief,' including restitution." *CFTC v. Brockbank*, 505 F. Supp.2d 1169, 1175 (D. Utah 2007) (quoting *Risk Capital Trading Group*, 452 F. Supp. 2d at 1247-48). Although customer reliance on the defendant's misrepresentation is not a necessary element of the CFTC's case in an enforcement action, it is essential to restitution relief sought to compensate an injured party to the extent that it tends to prove or disprove a causal nexus

21

between the fraudulent conduct and the injury suffered.   *Indosuez Carr Futures, Inc. v. CFTC*, 27 F.3d 1260, 1264-65 (7th Cir. 1994); *Rosenberg*, 85 F. Supp. 2d at 447.

In a case involving primarily a failure to disclose, reliance is presumed.  *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153  (1972).[6]  "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of th[e] decision [to buy or sell]."  *Id.* at 153-54.  *See Waters v. Int'l Precious Metals Corp.*  172 F.R.D. 479, 485 (S.D. Fla. 1996) (applying *Affiliate Ute* presumption of alliance to CEA omissions case).

This case involves both omissions and misrepresentations.  The Klotz Defendants failed to tell investors that they had no past experience trading commodity futures, failed to disclose the actual trading losses, and failed to tell investors that they were using participant funds for their own personal expenses.  From these omissions of material fact, reliance can be presumed.

However, the Court does not believe it is necessary to rely on a presumption.  The Court is satisfied that there is ample evidence in the record to support a finding that the Aurifex participants relied on both the false statements and the omissions.  For example, Nancy Carter testified that Ty Klotz told her she could expect to make fifteen to twenty percent per month, and after investing and receiving statements showing large profits and

---

[6]Although *Affiliated Ute* involved the Securities Exchange Act of 1934, courts have traditionally looked to case law developing similar provisions of the securities laws in interpreting provisions of the CEA.  *Saxe*, 789 F.2d at 109 (citing *Merrill, Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 395 (1982)).

no losses, she opened additional accounts.  (Ex. 34, Prelim. Inj. Hr'g Tr. 9, 12, 14.)  Nick Sprenkle testified that based on Ty Klotz' representations, the profits shown on the monthly statements and Ty Klotz's registration  certificate, he encouraged other people to invest.  (Ex. 35, Sprenkle Dep. 48, 94, 138; Ex. 45.)  Michelle Mullins decided to invest more money with Aurifex because her previous investments were doing so well, and because Ty Klotz told them they could not lose the money because it was backed by gold and silver.  (Ex. 38, Prelim. Inj. Hr'g Tr. 24-25, 27; Ex. 44.)  Sandy Seiler felt safe in investing because Ty said her money would stay safe and secure in a separate bank account.  (Ex. 41, Prelim. Inj. Hr'g Tr. at 58).

Ty Klotz and M. Klotz do not object to the entry of an order of restitution.  They have only requested the Court to take into consideration the assets that are in the control of the Receiver.  The Court will not reduce the restitution order by the value of the assets in the control of the Receiver because that amount is not yet certain and because there are still expenses associated with the Receivership estate.  The Court agrees, however, that after the assets are liquidated and all Receivership fees have been paid, the assets remaining in the Receivership estate will be used to offset the Klotz Defendants' restitution obligations.

Plaintiff CFTC also seeks an award of prejudgment and post-judgment interest.  Post-judgment interest on a money judgment in a civil case in a district court is mandated by statute.  28 U.S.C. § 1961(a).  "Under federal law, the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary

value of his loss from the time of the loss to the payment of [the] judgment." *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1288-89 (10th Cir.1998). Prejudgment interest is therefore "ordinarily awarded, absent some justification for withholding it." *Id*. If the district court determines that an award of prejudgment interest would serve to compensate the wronged party, it must then determine whether the equities preclude such an award. *CFTC v. Brockbank*, 505 F. Supp. 2d 1169, 1175-76 (D. Utah 2007). The Court finds that an award of prejudgment interest is necessary to compensate the investors for their losses and is not precluded by the equities.

Accordingly, an order will be entered requiring Defendants Ty Klotz and M. Klotz, jointly and severally, to pay $1,826,708.16 in restitution, together with prejudgment and post judgment interest.

## VIII.

Plaintiff CFTC has requested the Court to enter a civil penalty against the Klotz Defendants in the amount of $120,000 for each of the counts of the Complaint in which they are charged with violations of the Act or Regulations. Because Ty Klotz is charged in eight counts, the CFTC proposes a $960,000 penalty for him. Because M. Klotz is charged in seven counts, the CFTC proposes an $840,000 penalty for her.

Defendant Ty Klotz objects to the penalty as being excessive. He contends that he will attempt to pay restitution, but that the addition of the penalty will defeat any chance of repayment during his lifetime.

Defendant M. Klotz objects to any penalty because she contends that Ty Klotz was the perpetrator of the fraud: the accounts were established at his direction, he solicited the funds, and he published the fraudulent statements.

The CEA authorizes the Court to impose a civil monetary penalty against a defendant for each violation of the Act or CFTC Regulations established by the record. 7 U.S.C. § 13a-1(d). The CFTC's Regulations permit a civil monetary penalty of not more than $120,000 for each violation or triple the monetary gain to the defendant, whichever is greater, for each violation. 17 C.F.R. § 143.8.

In determining the total amount of the monetary penalty to be imposed the Court is required to "consider the appropriateness of such penalty to the gravity of the violation." 7 U.S.C. § 9a(1). In setting the amount of the penalty "the financial worth of the defendant or the collectibility of any fine are no longer relevant considerations." *Brenner v. CFTC*, 338 F.3d 713, 723 (7th Cir. 2003). Accordingly, Ty Klotz's argument that he will not be able to repay the penalty is not a relevant consideration.

The Court must consider instead the gravity of the violation. "Civil penalties should be imposed to act as a deterrent, but should be proportional to the gravity of the offenses committed." *Brockbank*, 505 F. Supp. 2d at 1177 (quoting *CFTC v. Gibraltar Monetary Corp., Inc.*, No. 04-80132-CIV, 2006 WL 1789018, at *27 (S. D. Fla. May 30, 2006)). In *Brockbank* the court determined that the imposition of the highest possible civil fine against the defendant was warranted because "[t]he seriousness of his violations goes to the heart

of the regulatory purpose-prevention of the type of fraud in which he repeatedly and continuously engaged." *Id.* "The short list of aggravating factors for Brockbank include his flagrant, repeated, and systemic violations, his refusal to obey the preliminary injunction, his violation of the asset freeze, his using large sums of investor money as his own, his refusal to return or account for the large amount of investor money he moved offshore, his hiding assets, his destroying evidence, and his total lack of cooperation with and actual obstruction of the CFTC." *Id.*

Ty Klotz's violations similarly go to the heart of the regulatory purpose of preventing the type of fraud in which he engaged. He set up a complicated scheme to take advantage of vulnerable individuals, used his wife to assist him in that scheme, used the investors' money as his own, left the state when he ran into difficulties, hid money, and failed to cooperate with the CFTC even after multiple court orders. The Court is satisfied that given the nature of his violations, the imposition of the highest civil penalty of $120,000 for each of the eight violations is appropriate.

As to M. Klotz, the Court disagrees with her suggestion that no penalty be imposed because Ty Klotz was the perpetrator of the fraud. Ty Klotz did not act alone. His fraud depended on the cooperation of M. Klotz. M. Klotz opened bank accounts and a trading account to enable the fraud to proceed, she deposited participants' money in her accounts and then proceeded to spend that money as if it were her own. She was more cooperative with the CFTC than was Ty Klotz, but M. Klotz has not accounted for all her expenditures

and was less than forthright with the CFTC regarding the source of money for her home.

She was less involved in the overall scheme to defraud than was Ty Klotz and a smaller

penalty will be sufficient to act as a deterrent.   Accordingly, the Court finds that a civil

monetary penalty of $50,000 for each of her seven violations is appropriate.

An order and judgment consistent with this opinion will be entered.

Date:   February 1, 2008          /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE